UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUGO SUBOTOVSKY and GUIDO SUBOTOVSKY, <br><br> Plaintiffs, <br><br> -against- <br><br> PASTOR KYSHAWN CEDRIC WHITE and SECOND PROVIDENCE BAPTIST CHURCH, INC., <br><br> Defendants. | 24-cv-1549 (AS) <br><br> OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

Plaintiffs Hugo and Guido Subotovsky are real estate developers. Dkt. 28 ¶ 9. The Subotovskys were part of project to develop land bought from defendant Second Providence Baptist Church. *Id.* Somewhere along the way, the relationship between the Subotovskys and the church's pastor, defendant Kyshawn White, soured—bringing us to this suit.

The Subotovskys allege that White defamed them and that the church is vicariously liable for White's actions. *See id.* ¶ 22-29. The complaint points to two defamatory statements White apparently made. First, White said that the Subotovskys "are crooks" in multiple meetings with the Subotovskys' business associates. *Id.* ¶ 14. Second, White wrote in a text message (again to a business associate of the Subotovskys) that the Subotovskys "are using the church as a scapegoat and cheating their investors." *Id.* ¶ 15. Defendants moved to dismiss. Dkt. 29.

But our story doesn't end there. After the motion was filed, defendants moved for sanctions against the Subotovskys and their counsel. Dkt. 44. Defendants argue that the main purpose of the Subotovskys' suit was to harass and embarrass White, and that the complaint's allegations are frivolous and wholly unsupported by evidence. *See* Dkt. 45 at 6-9.

For the reasons stated below, defendants' motion to dismiss is GRANTED and their motion for sanctions is DENIED.

## LEGAL STANDARDS

Section 1332 provides federal courts with jurisdiction over suits where there is complete diversity of citizenship and more than $75,000 in controversy. *See* 28 U.S.C. § 1332(a). "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (citations and internal quotations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, a court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

Under New York law, a defamation plaintiff needs to show five things: "(1) a . . . defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the [defamed] party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)." *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (quoting *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000)).

## DISCUSSION

### I. The Court has subject-matter jurisdiction.

Defendants first argue that the Court lacks subject-matter jurisdiction because the Subotovskys can't meet the amount-in-controversy requirement.

This argument faces an uphill climb. The Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999). To overcome this presumption, defendants must show "to a legal certainty that [the Subotovskys] could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (quoting *Wolde-Meskel*, 166 F.3d at 63).

Defendants can't do that. The Subotovskys allege that "several development projects worth tens of millions of dollars" have fallen through because of the alleged defamation and that they have suffered "mental anguish, emotional distress, loss of standing in the financial/real estate community[,] and anxiety." Dkt. 28 ¶¶ 18-19. This is enough—perhaps just enough—to plausibly allege that they have suffered more than $75,000 worth of harm. *See Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (plaintiff's burden is "hardly onerous").

Defendants argue that this suit doesn't meet the jurisdictional threshold because New York law bars lost-opportunity damages that are too speculative. *See Keystone Foods Holdings Ltd. v. Tyson Foods, Inc.*, 2023 WL 3477157, at *2 (2d Cir. May 16, 2023). Defendants are half-right: some portions of the complaint seem to allege damages based on hypothesizing about what could have been. *See* Dkt. 28 ¶ 18.

However, the Subotovskys' claim is one for defamation per se. *See* Dkt. 28 ¶ 1. New York law provides that "[i]f a statement is defamatory per se, injury is assumed." *Celle*, 209 F.3d at 179. This presumption comes from the idea that instances of defamation per se "are virtually certain to cause serious injury to reputation, and that this kind of injury is extremely difficult to prove."

*Carey v. Piphus*, 435 U.S. 247, 262 (1978). It also means that, so far as damages are concerned, a claim of defamation per se opens the door to recovery for injury stemming from "loss of reputation, humiliation and mental anguish." *Blumenstein v. Chase*, 473 N.Y.S.2d 996, 998 (2d Dep't 1984) (citation omitted). Defendants haven't shown to a legal certainty that the Subotovskys' damages from this sort of injury are less than $75,000.

As discussed in the next section, the Subotovskys aren't entitled to *any* of these damages. After three tries, they still haven't managed to allege a plausible claim of defamation. But that's a merits issue. For jurisdictional purposes, the complaint has alleged enough to get in the courthouse door.

**II.     After three tries, the Subotovskys still fail to allege defamation.**

Defendants next argue that the complaint fails to state a claim for defamation per se. Defendants are right. The Subotovskys point to one statement that is protected opinion, and they abandoned the only other statement in the complaint after being threatened with sanctions.

Statements of pure opinion aren't defamatory because they can't be proven false. *See Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997); *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977). In making the initial cut between fact and opinion, New York courts look to three factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1167 (N.Y. 1993) (internal quotations omitted). "The thrust of the dispositive inquiry … is whether a reasonable reader could have concluded that the [statements] were conveying facts about the plaintiff." *Levin*, 119 F.3d at 196 (cleaned up).

If these three factors indicate that a statement is an opinion, New York courts then look to what a statement implies to determine whether it still might be actionable. *Davis v. Boeheim*, 22 N.E.3d 999, 1004 (N.Y. 2014). An opinion statement that "impl[ies] a basis in undisclosed facts, or facts known only to the author" is considered a "mixed opinion" and a proper basis for a defamation claim. *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014). "The actionable element of a 'mixed opinion' is not the false opinion itself—it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking." *Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22, 24 (2d Cir. 2015) (quoting *Steinhilber v. Alphonse*, 501 N.E.2d 550, 552-53 (N.Y. 1986)). By contrast, "[p]ure opinion is a statement of opinion which is accompanied by a recitation of the facts upon which it is based or does not imply that it is based on undisclosed facts." *Chau*, 771 F.3d at 129 (internal quotations omitted) (quoting *Steinhilber*, 501 N.E.2d at 550). "[A] pure opinion cannot be the subject of a defamation claim." *Davis*, 22 N.E.3d at 1004.

3

Now consider White's alleged comments that the Subotovskys "are crooks." *See* Dkt. 28 ¶ 14. These smack of opinion. Whether someone is a "crook" has no precise meaning, nor can it be proven true or false. *See 600 W. 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 936 (N.Y. 1992) ("The allegation of 'denigration' . . . falls far short of any requirement of verifiability."). To be sure, "verifiability itself isn't always clear." *Flynn v. Cable News Network, Inc.*, 2024 WL 1765566, at *5 (S.D.N.Y. Apr. 24, 2024). Here, however, a wealth of case law saves the Court from having to the plumb the philosophical depths of epistemology. As the Court has previously explained:

> On one side of the line, accusing someone of perjuring himself, raping someone at gunpoint, libeling someone, or personally approving prostitution on his property are sufficiently definite to be proven false. But accusing someone of being far-right, right-wing, a conspiracy theorist, a fascist, part of the radical right, a communist, a blackmailer, a scab, a toady, a hypocrite, a racist, a fraud, or a bully is not verifiable.

*Id.* (citations omitted). Calling people "crooks"—like calling them scabs, frauds, or hypocrites—isn't verifiable. *See* W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 111, at 776 (5th ed. 1984) ("A certain amount of vulgar name-calling is tolerated, on the theory that it will necessarily be understood to amount to nothing more."); *see also Flynn*, 2024 WL 1765566, at *12 ("[I]f a statement is unverifiable because it is open to many interpretations, a reasonable reader would not infer that the author had some particular undisclosed, defamatory facts in mind as the statement's basis.").

The Second Circuit has held that calling someone a "crook" is a non-actionable, pure opinion. *Chau*, 771 F.3d at 129 ("the epithet[] . . . crook[]" is "hyperbole and therefore not actionable opinion"). As the *Chau* court explained, "[w]hile someone may not appreciate being called a [crook], it is an expression of one's view of another, and moreover might not reflect reality[.] . . . Time may prove the insult misguided, but the insult is not itself a fact—but rather, is one's perception of facts—at the time it is uttered." *Id.* The complaint doesn't say anything about the context here that would suggest that calling the Subotovskys "crooks" is nevertheless actionable. In fact, the barebones pleading doesn't say much about the context at all, other than that the statements were made at a series of meetings with the Subotovskys' business associates. *See, e.g.,* Dkt. 28 ¶ 14.

The Subotovskys try to avoid *Chau* by claiming that the decision held only that a collective string of epithets qualified as hyperbole. *See* Dkt. 33 ¶ 42. It didn't. While *Chau* certainly involved more than just the insult "crooks," the court's reasoning makes clear that each of the insults at issue was "hyperbole" and so protected opinion. *See Chau*, 771 F.3d at 129. That's because none could "reasonably be interpreted as stating actual facts about an individual." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (cleaned up); *see also Biro*, 883 F. Supp. 2d at 463 (holding that "shyster," "con man," and "finding an 'easy mark'" were "the type of rhetorical hyperbole and imaginative expression that is typically understood as a statement of opinion" (internal quotations omitted) (quoting *Milkovich*, 497 U.S. at 20)); *Old Dominion Branch No. 496, National*

4

*Association of Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974) ("The . . . use of words like 'traitor' cannot be construed as [a] representation[] of fact.").

The complaint also says White texted that the Subotovskys "are using the church as a scapegoat and cheating their investors." *See* Dkt. 28 ¶ 15. But while this text is in the complaint as one of the allegedly defamatory statements at issue, the Subotovskys dropped it after defendants discovered that the text was sent outside of the limitations period. Dkt. 46 ¶¶ 14, 21 (confirming that "[p]laintiffs base their defamation claim on slander and slander alone" and "not . . . the WhatsApp message").

The Subotovskys argue that they shouldn't have to plead the allegedly defamatory statements at issue because we're at the pleadings stage. Dkt. 46 ¶ 17. They even cite to outdated case law reflecting the pre-*Twombly* "no set of facts" pleading standard to defend their "ready, fire, aim" strategy. Dkt. 33 ¶ 14. However, under *Twombly* and its progeny, a defamation plaintiff is required to plead the allegedly defamatory statements and surrounding circumstances at issue so that the Court can determine whether, assuming the well-pleaded factual allegations in the complaint as true, there is an actionable claim. *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). The Subotovskys don't come close to meeting this standard, and so their defamation claim against White is dismissed. And because the Subotovoskys can't sustain a claim for defamation against White, Second Baptist can't be vicariously liable. "[T]here can be no imposition of vicarious liability in the absence of underlying liability." *Hakimi v. Guidant Glob.*, 2023 WL 8005321, at *12 (S.D.N.Y. Nov. 17, 2023) (citation omitted).

This is the Subotovskys' third bite at the apple. On a prior motion to dismiss, the Court granted the Subotovskys leave to amend their complaint—with an explicit reminder of their burden under the Federal Rules of Civil Procedure and *Twombly*. *See* Dkt. 27. The Subotovskys ignored that admonition at their peril. The complaint is dismissed with prejudice.

**III.   While it's a close call, the Court declines to sanction the Subotovskys or their counsel.**

"Rule 11(c) of the Federal Rules of Civil Procedure allows the court to sanction a party, if the court determines that the party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008). The Second Circuit has instructed courts to impose sanctions "with restraint," *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005) (citation omitted), and "to resolve all doubts in favor of the [non-movant]," *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (citation omitted).

Defendants raise some potent issues in their Rule 11 motion. The most concerning of these is about the defamatory text message. Defendants say that the Subotovskys knew that this text was sent on November 23, 2021, *see* Dkt. 45-10, and that the one-year statute of limitations had long since run when they filed their complaint. *See McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 535 (2d Cir. 2009) (citing N.Y. C.P.L.R. § 215(3)). The Subotovskys don't dispute that any claim based on the text message is time-barred. Instead they insist that their case was never based on it. But that's not what the complaint or their motions papers say. Paragraph 15 of the complaint

includes what White wrote in the text as a separate defamatory statement underlying the Subotovskys' claims (while omitting the date of the message). *See* Dkt. 28 ¶ 15. And in their opposition to the motion to dismiss, the Subotovskys repeatedly reference White's text message as a basis for their defamation claim. *See* Dkt. 33 ¶¶ 7, 45-46, 48. On top of that, defendants point out that when the Subotovskys produced the text message in discovery, they removed the text message's date and stripped away its date stamp. *See* Dkt. 45-9 at 8; Dkt. 45-1 at 1-2. All this taken together "strongly suggests that the plaintiffs and their counsel were aware of the statute of limitations problem from the outset and attempted to hide it." *Freeman v. Bianco*, 2003 WL 179777, at *5 (S.D.N.Y. Jan. 24, 2003).

Nevertheless, considering the restraint counseled by the Second Circuit, the Court declines to impose sanctions. The Subotovskys and their counsel may have intentionally tried to gild the lily as to the text message. But their pleadings also suggest that this kerfuffle may have been the result of inadvertence and inexperience, and not intentional malfeasance. For that reason, the motion for sanctions will be denied. But the Court reminds counsel of their obligations under Rule 11 in this and other cases moving forward.

## CONCLUSION

For these reasons, defendants' motion to dismiss is GRANTED. Their motion for sanctions is DENIED. The Clerk of Court is directed to terminate Dkts. 29 and 44 and close this case.

SO ORDERED.

Dated: February 27, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge

6